**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

| | |
|---|---|
| RUSLAN ALEKHIN,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, FOLKSTON ICE PROCESSING CENTER,[1]<br><br>Respondent. | CIVIL ACTION NO.: 5:25-cv-58 |

# ORDER AND REPORT AND RECOMMENDATION

Petitioner Ruslan Alekhin ("Alekhin") filed his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. Doc. 1. Respondent filed a Motion to Dismiss, doc. 10, and Alekhin filed a Response, doc. 11. Alekhin also filed two Motions for Hearing. Docs. 13, 20. The Petition is ripe for review. For the following reasons, I **RECOMMEND** that the Court **GRANT in part** Alekhin's Petition, doc. 1, and **DENY** Respondent's Motion to Dismiss, doc. 10. I also **RECOMMEND** that the Court order Respondent to provide Alekhin with an individualized bond hearing before an immigration judge.[2] I **DENY as moot** Alekhin's Motions for Hearing,

---

[1] Although Petitioner named other Respondents, at this point, only the Warden has appeared and responded. The United States Attorney representing the Warden in this case has consistently recognized that a warden, as custodian over a petitioner, is the only proper respondent and that the warden can effectuate relief the Court orders.

[2] In some prior instances, immigration judges conducting court-ordered individualized bond hearings have relied on statutory provisions that impose mandatory detention as a basis for denying bond to a detainee. To be clear, in this case, if an immigration judge conducts an individualized bond hearing, the immigration judge should not consider or rely on any statutory provision or regulation that imposes mandatory detention for Alekhin. Instead, the immigration judge should make an individualized bond determination based on the danger Alekhin's release would pose to the safety of other persons or property and based on the likelihood that Alekhin will appear for scheduled proceedings.

docs. 13, 20. If the District Judge adopts my recommendation, Alekhin may file a request for attorneys' fees and costs within 14 days of that order.

**INTRODUCTION**

Alekhin entered the United States in January 2024. An immigration judge granted Alekhin's application for asylum in November 2024. DHS appealed the asylum grant, and that appeal remains pending. Alekhin has been in DHS custody since January 2024, and he remains in custody now. Since Alekhin has been in custody, he has made two requests for custody redetermination and two requests for parole, all of which have been denied.

In his Petition, Alekhin asks the Court to order Respondent to conduct an individualized bond hearing or release him. Under the applicable statutes and regulations, Alekhin is subject to mandatory detention, without a right to a bond hearing, and the only avenue for release is parole. Respondent correctly notes that this Court cannot review discretionary decisions of the immigration judge or Board of Immigration Appeals and, therefore, the Court will not review decisions like the denial of Alekhin's requests for parole. However, for the following reasons, I conclude that Alekhin's prolonged detention without an individualized bond hearing violates due process. Therefore, I recommend the Court order Respondent to conduct an individualized bond hearing or release Alekhin without conditions.

**BACKGROUND**

Alekhin is a Russian citizen who was detained at the Folkston Immigration and Customs Enforcement ("ICE') Processing Center after his arrival into the United States on January 10, 2024. Doc. 1 at 4–6; see also Doc. 1-2 at 1. On November 19, 2024, an immigration judge issued a written decision granting Alekhin asylum, finding that he met his burden to establish a well-founded fear of persecution based on being forced to join Russia's military if he returned to

Russia. Doc. 1 at 7. On December 17, 2024, the Department of Homeland Security ("DHS") filed a Notice of Appeal, Form EOIR-26, incorrectly identifying Alekhin's address, and he never received the Notice of Appeal. Id. at 8. Alekhin discovered that DHS had filed the appeal by calling the EOIR case hotline. However, because he had never received the Notice of Appeal, Alekhin was unable to adequately prepare his response to DHS's appeal. Id. Eventually, Alekhin obtained an immigration attorney who entered an appearance on February 13, 2025, and promptly received a briefing extension through March 19, 2025. Id.

Alekhin's immigration attorney, Alizeh Sheikh, filed a motion to summarily dismiss DHS's appeal for deficient service of process on March 13, 2025. On March 19, 2025, both parties filed briefs addressing the merits of the appeal. Id. According to Alekhin, DHS did not timely respond to the motion to summarily dismiss the appeal so the motion should have been deemed unopposed. Ms. Sheikh filed a notice of DHS's non-opposition to the motion to summarily dismiss on May 13, 2025, but on May 28, 2025, DHS filed their response brief opposing dismissal. Id. at 8. Alekhin filed this Petition on June 3, 2025, and as of that date the motion to summarily dismiss and the appeal remained pending. Id.; see also Doc. 1-6 at 1.

Regarding detention, Ms. Sheikh filed a request with ICE for Alekhin's release on parole on April 2, 2025. The request was denied in "a few hours." Id. at 9. Also, Alekhin has been denied custody redetermination (bond) twice under 8 C.F.R. § 1236. See Doc. 10-1 at 24–28. The immigration judge's order states that the custody redetermination was denied because the immigration court lacked jurisdiction since Alekhin is an "arriving alien." Id. at 24, 27.

On the date Alekhin filed the Petition, he had been in detention for almost 17 months. Now, Alekhin has been detained for over two years, and it has been nearly 15 months since the immigration judge granted Alekhin asylum. Alekhin is held in medium security at the detention

center. He states that he accidentally stepped on the back of a facility officer's shoe and thereafter faced disciplinary repercussions, despite his apologies to the officer. Id. Alekhin argues that he is being held in punitive conditions in the detention center while DHS seeks an appeal "that it does not deny it never provided him notice of." Id. Alekhin filed a declaration on September 26, 2025, stating that he was sexually assaulted on July 8, 2025, while detained at the Folkston Center. Doc. 14-1. Alekhin asserts in Count One that Respondent has violated the Due Process Clause of the Fifth Amendment. In Count Two, Alekhin asserts a violation of the Suspension Clause to the U.S. Constitution regarding his prolonged detention without a bond hearing. Id. at 45–47. Alekhin asks the Court to order DHS to bear the burden at any individualized bond hearing. Alekhin also seeks reasonable attorney's fees and costs under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412.

Respondent counters that Alekhin's detention since January 2024 has been due to the statutory requirement resulting from Alekhin's request to have his claim of persecution reviewed and that such review "has taken time, particularly since the parties in the immigration proceedings have made arguments both to the immigration judge and to the Board of Immigration Appeals ("BIA")". Doc. 10 at 4. Respondent argues that Alekhin has failed to show his detention violates due process. Id. at 5. Respondent also argues that the Court lacks jurisdiction to review Alekhin's claims arising under the Suspension Clause, which "amount[] to a challenge to his status in expedited review and the parole decisions of DHS." Id. at 8.

## I. Alekhin Is Entitled to a Bond Hearing Due to His Prolonged Detention

Respondent argues that Alekhin's detention complies with applicable law and that he has failed to show his detention violates due process.[3] On the first argument, Respondent characterizes Alekhin as an "arriving alien" in expedited removal proceedings under 8 U.S.C. § 1225(b)(1) and, as such, detention is mandatory while the Attorney General reviews his asylum application. Doc. 10 at 3.

Conversely, Alekhin argues that he is detained under § 1225(b)(2), since he is an applicant for admission who is actively seeking admission. See Doc. 11 at 9. Alekhin asserts that he does not fall within either of the detention categories at § 1225(b)(1) because he never had a credible fear interview. Instead, an asylum officer issued a discretionary Notice to Appear, thereby placing him into proceedings under § 1225(b)(2). Id.

The parties' debate over which subsection of § 1225(b) applies does not impact the ultimate issue—namely, whether Alekhin's detention has become unconstitutionally prolonged

---

[3] Neither party disputes that Alekhin is entitled to due process, and I follow the United States Supreme Court's instruction that "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent" are entitled to due process. Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Indeed, regardless of Alekhin's entry status, any "statute permitting indefinite detention of an alien would raise a serious constitutional problem." Id. at 690. Many other courts have concluded that prolonged detention under § 1225(b) without a bond hearing may become unreasonable and unconstitutional. See, e.g., A.A. v. Warden, Stewart Det. Ctr., No. 4:24-cv-191, ECF No. 23 (M.D. Ga. Feb. 13, 2026) (collecting cases and citing Sadeqi v. Larose, ___ F. Supp. 3d ___, 2025 WL 3154520, at *2 (S.D. Cal. Nov. 12, 2025) ("This Court agrees with the majority position that a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing."); Fils-Aime v. FCI Berlin, Warden, ___ F. Supp. 3d ___, 2025 WL 3063164, at *3 (D.N.H. Oct. 31, 2025) (explaining that the court "joins the several district and circuit courts that have suggested and held that prolonged mandatory detention pending removal proceedings, without a bond hearing, will at some point violate the right to due process."); Al-Thuraya v. Warden, Orange Cnty. Corr. Facility, ___ F. Supp. 3d ___, 2025 WL 2858422, at *5 (S.D.N.Y. Oct. 9, 2025); A.L. v. Oddo, 761 F. Supp. 3d 822, 825–26 (W.D. Penn. 2025); Leke v. Hott, 521 F. Supp. 3d 597 (E.D. Va. 2021); Kydyrali v. Wolf, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020); Mbalivoto v. Holt, 527 F. Supp. 3d 838, 850 (E.D. Va. 2020); Abdul-Samed v. Warden of Golden State Annex Det. Facility, No. 1:25-CV-00098, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025); Arechiga v. Archambeault, No. 2:23-cv-00600, 2023 WL 5207589, at *4 (D. Nev. Aug. 11, 2023); Hong v. Mayorkas, No. 20-cv-01784, 2022 WL 1078627, at *3 (W.D. Wash. Apr. 11, 2022)).

such that he is entitled to a bond hearing. Under either subsection of § 1225(b), Alekhin would be subject to mandatory detention. See Jennings v. Rodriguez, 583 U.S. 281, 297 (2018); Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020) (citing 8 U.S.C. § 1225(b)(1)(B)(ii) and holding that even "[a]pplicants who are found to have a credible fear may [] be detained pending further consideration of their asylum applications."). Bond is not ordinarily available to those detained pending removal proceedings under § 1225(b)(1). See Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1168 (W.D. Wash. 2023) ("The Attorney General [has] interpreted 8 U.S.C. § 1225(b)(1)(B)(ii) to require mandatory detention without bond hearings for asylum seekers who were initially subject to expedited removal but later transferred to full removal proceedings after establishing a credible fear.") (citing Matter of M-S, 27 I. & N. Dec. 509, 515–17 (2019)); see also Jennings, 583 at 302 (noting § 1225(b) "mandate[s] detention of aliens throughout the completion of applicable proceedings."); Bermudez Paiz v. Decker, No. 18-CV-4759, 2018 WL 6928794, at *6 (S.D.N.Y. Dec. 27, 2018) (petitioner was subject to mandatory detention under § 1225(b) even though his asylum claim was on appeal to the BIA); Leke v. Hott, 521 F. Supp. 3d 597, 600 (E.D. Va. 2021) (discussing the Supreme Court's holding in Jennings regarding mandatory detention for consideration of the asylum application and concluding that "there can be no dispute that Petitioner is an arriving alien and that Petitioner's removal proceedings have not yet concluded in light of (i) the Fourth Circuit's pending review of Petitioner's asylum claim and (ii) the Fourth Circuit's Order staying the Immigration Judge's removal order"); Djelassi v. ICE Field Office Dir., 434 F. Supp. 3d 917, 928–29 (W.D. Wash.

2020) (concluding that, under Jennings, § 1225(b) governs detention of arriving aliens until "both administrative and judicial proceedings are finalized").[4]

In this case, Alekhin's asylum proceedings before the immigration court have concluded, but the Government's appeal to the BIA remains pending. Consequently, under the relevant statutes and aforementioned caselaw, Alekhin is subject to mandatory detention and, therefore, has no statutory right to a bond hearing. However, Alekhin asks the Court to determine whether his detention has become so prolonged that it violates due process and the Suspension Clause, despite the statutory language.

### A. Standards For Evaluating Due Process Challenges to Prolonged § 1225(b) Detention

In Zadvydas v. Davis, 533 U.S. 678, 699 (2001), the Supreme Court held that the Immigration Nationality Act ("INA") does not authorize "indefinite, perhaps permanent, detention," of aliens subject to final orders of removal under § 1231(a)(6) and, instead, construed the statute to contain an "implicit 'reasonable time' limitation," id. at 682. "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized six months as that time limitation. Id. at 701. It further found that if a statute were to permit indefinite detention of an alien, this would "raise a serious constitutional problem." Id. at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." Id.

Two years later, in Demore v. Kim, the Supreme Court considered a due process challenge to § 1226(c), which mandates detention during removal proceedings for aliens

---

[4] The only statutory exception to detention under either § 1225(b)(1) or (2) is parole. "[A]pplicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A); and then citing 8 C.F.R §§ 212.5(b) & 235.3); see also 8 C.F.R. § 212.5(a) (noting parole requests are considered by designated officials including ICE "directors of field operations."). As noted, Alekhin has been denied parole.

convicted of certain crimes. 538 U.S. 510 (2003). In holding that the government could constitutionally detain deportable aliens during the limited period necessary for their removal proceedings, the Supreme Court stressed the "brief" nature of mandatory detention under that section which, in the vast majority of cases, was less than five months' time. Id. at 518–21, 526, 529–30. Justice Kennedy, in his concurring opinion that provided the fifth vote to create the majority, reasoned that an alien could be entitled to "an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified" under the Due Process Clause. Id. at 532 (Kennedy, J., concurring) (citation omitted).

In 2018, in Jennings, the Supreme Court held that § 1225(b) of the INA—under which Alekhin is detained— mandates detention of aliens throughout the completion of applicable proceedings and the plain language of the statute does not support a six-month limitation or periodic bond hearings. Jennings, 583 U.S. at 297, 302. The Jennings Court declined to address whether the Constitution places limits on prolonged detention under the INA. Id. at 312. However, the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited and, typically, accompanied by an individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals. See United States v. Salerno, 481 U.S. 739, 750–51 (1987); Foucha v. Louisiana, 504 U.S. 71, 79 (1992); Kansas v. Hendricks, 521 U.S. 346, 360, 364 (1997).

### B. Consideration of Relevant Factors Demonstrate that Alekhin's Prolonged Detention Without a Bond Hearing Is Unconstitutional

#### *1. Test for evaluating the constitutionality of prolonged detention under § 1225(b)*

At the outset, it is important to discuss how the Court should evaluate whether Alekhin's detention has become unconstitutionally prolonged such that he is entitled to a bond hearing. The Eleventh Circuit Court of Appeals has not addressed the constitutionality of prolonged

mandatory detention of aliens held in § 1225(b) detention and, therefore, it is unclear what test applies. Alekhin contends that the factors identified in Sopo v. U.S. Att'y Gen. ("Sopo I") provide a fitting framework for conducting the due process analysis of his detention. 825 F.3d 1199, 1204 (11th Cir. 2016), vacated as moot, 890 F.3d 952 (11th Cir. 2018).[5] Respondent argues that, since Sopo I addressed § 1226(c) detention, it is "of limited utility" in the context of § 1225(b) detention. Respondent also argues that Sopo I is not analogous because the petitioner in Sopo I was an individual who already had legal status in the U.S. Doc. 10 at 5–6. However, Respondent does not offer an alternative test.

The Eleventh Circuit considered the constitutionality of prolonged § 1226(c) detention in Sopo I.[6] 825 F.3d at 1204; see also Vallecillo v. Breckon, No. 5:24-CV-78, 2025 WL 1508455, at *3 (S.D. Ga. Apr. 29, 2025), report and recommendation adopted, 2025 WL 1508042 (S.D. Ga. May 27, 2025) (explaining Sopo I's continued persuasiveness). Sopo I considered six factors: (1) the amount of time the alien has been in detention without a bond hearing; (2) the cause of the protracted removal proceedings (i.e., whether the petitioner or the government has improperly delayed the proceedings); (3) whether it will be possible to remove the alien upon the issuance of a final order of removal; (4) whether the period of civil immigration detention exceeds the time the alien spent in prison for the crime that rendered the alien removable; (5) whether the facility at which the alien is civilly detained is meaningfully different from a

[5] Following the initial Sopo I decision, the government moved for rehearing en banc, but the Eleventh Circuit stayed that request pending the Supreme Court's decision in Jennings. 890 F.3d at 953. Once the Supreme Court issued the Jennings decision, the Eleventh Circuit ordered additional briefing; however, prior to the parties filing the supplemental briefs addressing Jennings, the government moved to dismiss the Sopo I appeal as moot based on Sopo's removal from the United States. Id. Sopo agreed that his appeal had become moot, and the Eleventh Circuit granted the motion, dismissing the appeal and vacating its decision. Id. at 953–54.

[6] Section 1226(c) deals with detention of aliens who are removable due to commission of criminal offenses.

penal institution; and (6) the likelihood the removal proceedings will conclude in the near future. Id.

Because Sopo I considered detention under § 1226(c), it does not directly control the analysis of whether Alekhin's § 1225(b) detention has become unconstitutionally prolonged. Most courts in other districts considering the constitutionality of prolonged § 1225(b) detention employ a balancing test similar to Sopo I, and sometimes that test is borrowed from cases related to § 1226(c) detainees. See, e.g., Banda v. MacAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019); Hong v. Mayorkas, No. 20-CV-01784, 2022 WL 1078627, at *3 (W.D. Wash. Apr. 11, 2022) (applying Banda factors and Mathews v. Eldridge, 424 U.S. 319 (1976), to find detention for nearly 30 months without a bond hearing violated due process); Paiz, 2018 WL 6928794, at *13 (applying §1226(c) detention factors from Sajous v. Decker, 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018)); Perez v. Decker, 18-CV-5279, 2018 WL 3991497 (S.D.N.Y. Aug. 20, 2018) (applying three-factor test and finding detention for nine months without a bond hearing was unreasonable); Rodriguez-Figueroa v. Barr, 442 F. Supp. 3d 549 (W.D.N.Y. 2020) (applying Mathews v. Eldridge and seven-factor test previously directed at aliens detained under § 1226(c) to determine the length of detention without a bond hearing was unreasonable); Da Silva v. Nielsen, Misc. Action No. 5:18-MC-00932, 2019 WL 13218461 (S.D. Tex. Mar. 29, 2019) (applying three-factor test); Jamal A. v. Whitaker, 358 F. Supp. 3d 853 (D. Minn. Jan. 22, 2019) (applying six-factor test).

Some courts have employed the test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976).[7] Mathews requires the Court to balance three factors: (1) "the private interest that will

[7] Notably, some courts do not use any of these tests. See Gevorg v. Warden of Golden State Annex Det. Facility, No. 1:25-CV-00992, 2025 WL 3496436, at *7 (E.D. Cal. Dec. 5, 2025) (holding that the threshold question is "whether Petitioner's continued detention serves the purported immigration

be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Alekhin suggests Mathews might apply, see doc. 11 at 2, but the Eleventh Circuit has not indicated that Mathews should apply. Further, no district court in the Eleventh Circuit has adopted Mathews to analyze prolonged detention in any immigration context. The Mathews test was developed to address deprivation of monetary benefits, and it is, therefore, less analogous than Sopo I. Cf. United States v. Wattleton, 296 F.3d 1184, 1198 (11th Cir. 2002) (applying Mathews test in civil commitment proceeding). The Mathews test is intended to resolve the question of "whether the administrative procedures provided . . . are constitutionally sufficient'" and to "balanc[e] the benefits or burdens of 'additional or substitute procedural safeguards.'" Mathews, 424 U.S. at 334–35. Moreover, the Mathews test "does not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." Banda, 385 F. Supp. 3d at 1106–07. I do not find Mathews to be "particularly probative of whether prolonged mandatory detention has become unreasonable in a particular case." Id.

Sopo I dealt with a different sort of mandatory detention. As a result, some of the Sopo I factors are relevant here, but others are difficult or impossible to apply. However, with some adjustments, the Sopo I factors can be used to evaluate the constitutionality of Alekhin's

---

purpose and has a definite termination point, as opposed to any "balancing test" to determine whether procedural due process is due."); Leke, 521 F. Supp. 3d at 605 (applying no balancing test).

detention.[8] In fashioning an appropriate test, I am mindful of the Supreme Court's admonishment to scrutinize indefinite (and, potentially, permanent) detention. See Zadvydas, 533 U.S. at 696 ("[W]e believe that an alien's liberty interest is, at the least, strong enough to raise a serious question as to whether, irrespective of the procedures used, the Constitution permits detention that is indefinite and potentially permanent." (internal citation omitted)). Therefore, I have considered the unique attributes of § 1225(b) detention and Alekhin's specific circumstances.

***2. Application of relevant factors***

*(a) Time in detention without a bond hearing.*

I first consider the amount of time Alekhin has been in detention without a bond hearing. For this factor, I consider the detention since Alekhin was granted asylum on November 19, 2024 to present.[9] Alekhin's post-asylum grant detention has lasted more than 15 months.

---

[8] I provide an example of a necessary adjustment to the Sopo I factors. In Sopo I, the court considered the amount of time the petitioner spent in criminal detention versus civil detention. 825 F.3d at 1218. This factor was relevant in Sopo I because the court was considering detention under § 1226(c), which pertains to criminal aliens. Alekhin entered into DHS custody immediately upon arrival, not after serving a sentence. Additionally, Alekhin states (and Respondent does not dispute) that he has no criminal history anywhere in the world. Doc. 1 at 35. It is impossible to apply this factor to Alekhin because he has not spent any time in criminal detention. However, I note that the court's consideration of this factor in Sopo I showed that even for a convicted criminal alien who served time in criminal detention, civil detention that exceeds the amount time served for the crime suggests unconstitutionally prolonged detention. The concern about unconstitutionally prolonged detention is even more pronounced for an individual like Alekhin who apparently has no criminal record and has never served time in criminal detention.

[9] Alekhin has made numerous requests for parole and custody redeterminations while in custody, all of which have been denied. Doc. 1 at 7, 9 (noting requests for parole in March, May, June, and August 2024 and April 2025); Doc. 10-1 at 2 (noting requests for redetermination in June and August 2024). Even so, it appears that all such requests were summarily denied without any individualized bond hearing. As a result, those events do not impact my calculation of the time Alekhin has been in detention without a bond hearing.

Additionally, I note that Alekhin has been in DHS custody since January 10, 2024. I use the date of his asylum grant as the starting point of my calculation, as it is the more conservative date and signifies

Alekhin's detention has continued far beyond the "presumptively reasonable" six-month limitation originally articulated in Zadvydas, which supports requiring review by a neutral decisionmaker. Sopo, 825 F.3d at 1217; see, e.g., Rashid v. Trump, No. 2:25-CV-732, 2025 WL 3210955, at *9 (D. Vt. Oct. 27, 2025) (holding that 15-month detention was unreasonably prolonged and ordering bond hearing); Paiz, 2018 WL 6928794, at *7 (stating that 16 months was an "extraordinary length of time" to be "continuously incarcerated" and granting petitioner a "prompt bond hearing"); Maliwat v. Scott, No. C25-788, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (over one year detention was unreasonably prolonged); Leke, 521 F. Supp. 3d at 604–05 (ordering bond hearing where petitioner was detained for two years); but cf. Gevorg v. Warden of Golden State Annex Det. Facility, No. 1:25-CV-00992, 2025 WL 3496436, at *7 (E.D. Cal. Dec. 5, 2025) (holding that petitioner's seven-month detention continued to serve the purported immigration purpose, had a definite termination point, and was thus lawful).

*(b) The cause of the protracted removal proceedings.*

Next, I consider the cause of the protracted removal proceedings (i.e., whether Alekhin or the government has improperly delayed the proceedings). Sopo, 825 F.3d at 1217. This factor weighs in Alekhin's favor. Respondent does not argue that Alekhin has caused any delay in the proceedings, and there is no evidence suggesting Alekhin did. On the other hand, Respondent is responsible for at least some of the delay. Respondent's appeal has been briefed and pending before the BIA for nearly a year, with no apparent movement. Also, when DHS appealed the grant of asylum, DHS used the wrong mailing address for Alekhin, which meant Alekhin did not receive timely notice of the appeal. Doc. 1 at 7–8. DHS also apparently failed to timely respond

---

a material change in Alekhin's circumstances. It may, however, be more appropriate to start the clock on the January 10, 2024, which would mean Alekhin's prolonged detention is now over two years. In this case, the distinction is immaterial, as both calculations are well beyond any presumptive period, and both calculations support the conclusion that Alekhin's detention has become unconstitutionally prolonged.

to Alekhin's motion to summarily dismiss the appeal by more than two months, both complicating and delaying the proceedings. Petitioner's Third Notice of Supplemental Authorities also convincingly provides examples of cases which have "acknowledged the lengthy appeals process" petitioners such as Alekhin suffer. Doc. 21 at 2. All of these facts demonstrate that DHS has delayed resolution of the immigration proceedings. Thus, this factor cuts in Alekhin's favor.

*(c) Likelihood of Alekhin's removability.*

Next, I consider whether it will be possible to remove the alien upon the issuance of a final order of removal. Sopo, 825 F.3d at 1218. This factor, taken from Sopo I, is difficult to apply directly to Alekhin's case, but it still provides some helpful guidance.

Alekhin argues this factor cuts in his favor because he already been granted asylum, and there is no indication he will be removed, much less in the near future. Moreover, Alekhin argues that even if he is ordered removed from the United States, that will be a difficult or impossible task. Alekhin asserts that in 2020, the United States designated Russia as "recalcitrant/uncooperative in accepting its own citizens who have been ordered removed." Doc. 1 at 33. Alekhin states that, in March 2022, removals to Russia were suspended when Russia invaded Ukraine, but the suspension is no longer in effect. Id. Alekhin contends that the number of removals to Russia remains low. Id. Respondent did not offer a counter argument. Indeed, Respondent has not provided any information about why Alekhin's asylum grant might be overturned, or the likelihood of that event. Ultimately, I find that this factor cuts in Alekhin's favor. If the asylum grant is overturned, then Alekhin might be removed, but even in that scenario, removal is not certain and nothing indicates removal will occur in the near future.

*(d) Whether Alekhin's detention is similar to a penal institution.*

Alekhin makes a substantial argument about the next factor—whether the facility where Alekhin is detained is meaningfully different from a penal institution. Sopo, 825 F.3d at 1218. Alekhin describes the institutional clothing, mandatory headcounts, universal punishment, razor wire barriers in the recreation yard, solitary confinement, restraints, and low pay for work. Doc. 1 at 36–37. Alekhin also describes the limited language access needs, the strict visitation policy, and the difficulties trying to represent himself pro se without the benefit of these two services. Id. Respondent does not dispute these factual assertions and instead claims merely that Sopo I should not apply in this case.

I find that this factor is relevant to evaluating detention under § 1225(b). More restrictive detention—like in a penal institution—increases constitutional concerns compared to less restrictive forms of detention. Additionally, on a similar record, I found the Folkston ICE Facility was not meaningfully different from a penal institution or criminal detention. See Clue v. Greenwalt, No. 5:21-CV-80, 2022 WL 17490505, at *5 (S.D. Ga. Oct. 24, 2022), report and recommendation, 2022 WL 17489190 (S.D. Ga. Dec. 7, 2022). Alekhin has shown here that his detention is not meaningfully different from a penal institution or criminal detention. This factor, thus, weighs in Alekhin's favor.

*(e) Likelihood that Alekhin's removal proceedings will conclude in the near future.*

I also consider the likelihood that Alekhin's removal proceedings will conclude in the near future. Respondent contends that "[u]ntil a decision arrives from the BIA, it is difficult for either party to do more than speculate about what removal proceedings may take place." Doc. 10 at 7. This statement demonstrates that Alekhin's detention is indefinite and there is no indication the removal proceedings will conclude in the near future.

In evaluating Alekhin's circumstances, and considering the unique attributes of § 1225(b) detention, I find that Alekhin's detention has become unconstitutionally prolonged such that he should be afforded a bond hearing.[10] Alekhin is entitled to an individualized detention hearing before an immigration judge. The immigration judge should make an individualized bond determination based on the danger Alekhin's release would pose to the safety of other persons or property and based on the likelihood that Alekhin will appear for scheduled proceedings.

## II. The Court Should Decline to Consider Count II and Should Deny That Claim Without Prejudice Relief

In Count II, Alekhin claims that his prolonged detention "violates his rights under the Suspension Clause insofar as discretionary parole is his only means for release." Doc. 1 at 47. Alekhin contends that the "parole mechanism under 8 U.S.C. § 1182(d)(5)(A) is constitutionally inadequate because ICE's parole decisions are entirely discretionary, unreviewable by any other authority, vulnerable to political pressure, and do not require ICE to proffer a shred of evidence justifying the noncitizen's continued detention." See id. (citing 8 U.S.C. § 1226(e); C.F.R. § 1003.19(h)(2)(i)(B).

The Court need not address Count II if it adopts my recommendation and grants in part Count I. If that recommendation is adopted, then Alekhin would receive his requested bond

---

[10] Even under Mathews, a detention hearing is warranted. First, Alekhin's interest "is the most elemental of liberty interests—the interest in being free from physical detention[.]" Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004). Given the protracted nature of obtaining review of his asylum claim and the potential appeal, there is no clear end in sight to his post-asylum-determination detention, which has now lasted for nearly 15 months. This starkly contrasts with Demore, where the Supreme Court determined that six months of pre-removal detention was not unconstitutional. 538 U.S. at 530. Second, the risk of erroneous deprivation when no pre-deprivation or post-deprivation hearing is held is high given that Alekhin has already been granted asylum. Third, the government's interest is not satisfied by denying a bond hearing. Detention in the immigration context "has two regulatory goals: ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." Zadvydas, 533 U.S. at 690 (cleaned up). If Alekhin is being detained despite neither being a flight risk nor a danger to the community, the Government's interest is not served. Rather, a post-deprivation bond hearing would ascertain whether the government's interests would be served by continued detention. Thus, even under Mathews, Alekhin is entitled to a bond hearing given his prolonged detention.

hearing, which is essentially the same relief he would be entitled to on Count II, if he prevailed on that claim. Therefore, I recommend the Court decline to address Count II and deny Count II without prejudice.

If the Court is inclined to consider Count II, I recommend that the Court deny the portion of Respondent's Motion to Dismiss seeking dismissal of Count II and allow Count II to proceed to additional merits briefing. In the Motion to Dismiss, Respondent makes one argument for dismissal of Count II: Respondent argues that this Court does not have jurisdiction to review Count II because 8 U.S.C. § 1252(e) "limits the jurisdiction of district courts to review expedited removal of individuals subject to such removal orders." Doc. 10 at 7. Respondent contends that Alekhin's Count II "amounts to a challenge to his status in expedited review and the parole decisions of DHS." Id. at 8.

Alekhin disagrees with Respondent. Alekhin argues that the Court has jurisdiction to adjudicate all of his claims because § 1252 only governs review of orders of removal, noting that the title of § 1252 is "Judicial review of orders of removal." Doc. 11 at 4. Alekhin emphasizes that he is only asking the Court to review his detention, not any removal order. Alekhin cites ample authority supporting the notion that a habeas petitioner asking a district court to review only the issue of detention is not necessarily asking the court to review a removal order as well, and, consequently, § 1252 does not deprive a court of jurisdiction.

At this time, Respondent has not shown that Count II should be dismissed for lack of jurisdiction. That is not to say that Alekhin has demonstrated jurisdiction—rather, Respondent has not shown the Court lacks jurisdiction. I reach this conclusion because: (1) the parties do not seem to agree on the precise nature of Count II; and (2) the issue of jurisdiction is not adequately briefed. I will elaborate.

On its face, Count II appears to be a facial, constitutional challenge to § 1182(d)(5)(A). Alekhin contends that statute violates the Suspension Clause because "parole decisions are entirely discretionary, unreviewable by any other authority, vulnerable to political pressure, and do not require ICE to proffer a shred of evidence justifying the noncitizen's continued detention." Doc. 1 at 47. Thus, Alekhin attacks the validity of § 1182(d)(5)(A), regardless of how it is applied. While Alekhin makes passing reference to his "prolonged detention," Count II is plainly asserted as a facial, constitutional challenge to § 1182(d)(5)(A). Stated differently, Count II, as alleged, does not appear to depend on the duration of Alekhin's detention or how the relevant statute has been applied to him.

Respondent characterizes Count II differently. Respondent states that Count II is "a challenge to [Alekhin's] status in expedited review and the parole decisions of DHS . . . ." Doc. 10. But it does not appear that Alekhin is challenging his status in expedited review or DHS's specific parole decisions. Respondent's misunderstanding of Count II means that Respondent's arguments about jurisdiction are all built on a shaky foundation. Additionally, Respondent has failed to address many of the additional counterarguments regarding application of § 1252 Alekhin makes in the Response to the Motion to Dismiss. See Doc. 11 at 5–10. As a result, Respondent has not shown the Court lacks jurisdiction to adjudicate Cout II.

That said, Alekhin has not established that the Court does have jurisdiction, either. Alekhin adds to the confusion about jurisdiction by lumping together Counts I and II in his response to the Motion to Dismiss, even though the jurisdictional concerns are, potentially, different for those two claims. Further complicating the matter, Alekhin argues that § 1252 has no applicability in this case because he is not subject to a final order of removal and, according to Alekhin, § 1252 only concerns orders of removal. Doc. 11 at 4. Or, more accurately, Alekhin

contends he *should not* be subject to a final order of removal. Alekhin acknowledges that a final order of removal was issued, but he contends that the order should be vacated because he was taken out of expedited removal proceedings and placed in immigration court proceedings. As a result, Alekhin potentially complicates Count II by asking the Court to consider whether the expedited order of removal was (or should be) vacated. That, however, is an issue this Court likely cannot adjudicate due to § 1252(e). In other words, if Count II hinges on the propriety of certain removal proceedings, or the validity of an issued order of removal, the Court may lack jurisdiction over Count II.[11]

In sum, I recommend the Court decline to address Count II and deny Count II without prejudice. If the Court is inclined to consider Count II, I recommend that the Court deny the portion of Respondent's Motion to Dismiss related to Count II and allow Count II to proceed to merits briefing.

## CONCLUSION

For these reasons, I **RECOMMEND** that the Court **GRANT in part** Alekhin's Petition, doc. 1, and **DENY** Respondent's Motion to Dismiss, doc. 10. I also **RECOMMEND** that the Court order Respondent to provide Alekhin with an individualized bond hearing before an immigration judge. I **DENY as moot** Alekhin's Motions for Hearing, docs. 13, 20. If the District Judge adopts my recommendation, Alekhin may file a request for attorneys' fees and costs within 14 days of that order.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate

---

[11] It may be that Alekhin made this argument to only bolster his position that he is not challenging an order of removal and § 1252 does not bar jurisdiction. But in making the argument Alekhin creates ambiguity about what, precisely, he is asking the Court to adjudicate in Count II.

Judge failed to address a contention raised in the Petition must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 26th day of February, 2026.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA